UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| In re:<br><br>JAMES RIVER COAL COMPANY, et al.,<br><br>Debtors. | Case No. 03-04095-MH3-11<br>Jointly Administered<br>Chapter 11<br><br>Adversary Proceeding<br>No. 05-409 |
| ANTHONY H.N. SCHNELLING, as Trustee of The JRCC Unsecured Creditor Liquidating Trust,<br><br>Plaintiff/Appellant,<br><br>v.<br><br>ROTHSCHILD INC.,<br><br>Defendant/Appellee. | 3:07-0578<br>JUDGE ECHOLS |

## MEMORANDUM

Pending before the Court is the timely direct appeal from the Bankruptcy Court's[1] final judgment, entered in this adversary action on April 6, 2007, in favor of Defendant/Appellee Rothschild Inc. ("Rothschild"), a New York private investment banking firm, and against Plaintiff/Appellant Anthony H.N. Schnelling, as Trustee of The JRCC Unsecured Creditor Liquidating Trust ("the Trustee"). The Court has jurisdiction of the appeal pursuant to 28 U.S.C. § 158(a)(1).

---

[1] The Honorable Marian F. Harrison.

1

## I. PROCEDURAL HISTORY

The Trustee filed an adversary proceeding in the Bankruptcy Court on March 24, 2005, pursuant to 11 U.S.C. § 547(b), claiming that Rothschild received three (3) preferential transfers totaling $764,333.97 in the ninety (90) days prior to the Chapter 11 bankruptcy filing of James River Coal Company and its direct and indirect wholly owned subsidiaries (collectively "the Debtors"). Rothschild provides investment banking services and served as a financial advisor to the Debtors both pre- and post-petition. Rothschild asserted among other things that the doctrine of *res judicata* precluded the Trustee's adversary action to recover preferential transfers because the Debtors engaged Rothschild as a post-petition professional with the Bankruptcy Court's approval and the Bankruptcy Court subsequently approved Rothschild's three post-petition applications for fees and expenses.

On December 30, 2005, Rothschild filed a motion to dismiss, or in the alternative, for summary judgment, to which the Trustee filed a response on January 17, 2006, and Rothschild filed a reply on January 24, 2006. The Bankruptcy Court heard oral argument on the motion and, on September 14, 2006, issued a Memorandum Opinion and Order denying Rothschild's motion to dismiss or for summary judgment on three separate grounds. (Docket Entry No. 4-1, Ex. 1.) Pertinent to this appeal, the Bankruptcy Court held that the doctrine of *res judicata* did not apply to bar the preference action because the existence of any preferences was not litigated in the retention proceeding concerning Rothschild and, even if the preference issue should have been litigated in the retention proceeding, Rothschild failed to disclose sufficient information to give the Trustee notice that a preference action might be warranted.

2

On September 22, 2006, Rothschild filed a motion to alter or amend the judgment, to which the Trustee filed a response on October 2, 2006. Following additional oral argument, the Bankruptcy Court issued a Memorandum Opinion and Order on April 6, 2007. (Docket Entry No. 4-2, Ex. 2, Memorandum Opinion and Order.) The Bankruptcy Court reversed its earlier decision, held that *res judicata* applied to bar the adversary action, and granted Rothschild's motion for summary judgment. In a separate Order, the Bankruptcy Court withdrew its earlier Memorandum Opinion and Order in favor of the Trustee. (Docket Entry No. 1-44.) The Trustee filed this appeal on April 12, 2007.

## II. FACTS

On March 25, 2003, the Debtors commenced the reorganization cases by filing voluntary petitions for relief under Title 11 of the United States Bankruptcy Code. The same day, the Debtors filed an application, pursuant to 11 U.S.C. §§ 327 and 328 and Bankruptcy Rule 2014 seeking an Order authorizing retention and employment of Rothschild as a financial advisor to provide restructuring and other services in connection with the Chapter 11 cases.[2] (Docket Entry No. 4-3,

---

[2] The Debtors' application included the following paragraph:

13. Under sections 327(a) and 328(a) of the Bankruptcy Code, a debtor in possession is authorized to employ professional persons that do not hold or represent an interest adverse to the bankruptcy estate and that are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, to represent or assist the debtor in carrying out its duties under the Bankruptcy Code. Section 1107(b) of the Bankruptcy Code modifies sections 101(14) and 327(a) in cases under chapter 11 of the Bankruptcy Code, providing that a person is not disqualified for employment under section 327(a) of the Bankruptcy Code by a debtor in possession solely because of such person's employment or representation of the debtor before the commencement of the case. Under section 328(a) of the Bankruptcy Code, a professional person retained under section 327(a) may be employed on any reasonable terms and conditions, including a retainer or on an hourly basis.

(Docket Entry No. 4-3, Ex. 3 at 4.)

3

Ex. 3.) The retention application specifically stated: "The Debtors retained Rothschild as of November 4, 2002 to serve as their financial advisor in connection with their restructuring efforts." (Id. at 6.) The retention application sought to engage Rothschild post-petition in accordance with the terms of the Letter and Indemnification Agreement (the "Letter Agreement") dated November 4, 2002, which was executed 140 days before the filing of the Chapter 11 reorganization cases. (Id., Ex. 3 at 14-25.) The Letter Agreement entitled Rothschild to receive various fees, including fixed monthly fees of $150,000 per month ("the Monthly Fee"), and reimbursement of out-of-pocket expenses. The retention application, in the "Disclosure of Compensation" section, provided in part:

> 23. Within the one-year period prior to the commencement of these Chapter 11 Cases, Rothschild has received approximately $764,333.97 from the Debtors in payment for services rendered and expenses incurred by Rothschild pursuant to the Letter Agreement. Rothschild is not currently owed any amounts with respect to its pre-petition fees and expenses.

(Id., Ex. 3 at 9.) The retention application was supported by the Declaration of David L. Resnick, Managing Director of Rothschild. Resnick attested in pertinent part that "[s]ince November 2002, Rothschild has rendered financial advisory services to the Debtors in connection with their restructuring efforts[]"; he disclosed that Rothschild was being paid a Monthly Fee of $150,000 pursuant to the Letter Agreement; and he repeated that Rothschild had received approximately $764,333.97 from the Debtors within the one-year period prior to commencement of the Chapter 11 bankruptcy cases.[3] (Ex. 3 at 27, 30, Resnick Decl. ¶¶ 4, 8-9.)

---

[3]Rothschild's attorney argued before the Bankruptcy Court that an attorney is required to disclose the amount of fees and expenses he or she received from a debtor within the one-year period before a bankruptcy filing, see 11 U.S.C. §329, and Rothschild followed this statute by giving notice that it received payments from Debtors for fees and expenses incurred in the year prior to Debtors' bankruptcy filing. Counsel further argued that, by giving the one-year notice, Rothschild necessarily also disclosed receipt of payments within the 90-day preference period, see 11 U.S.C. § 547, because Rothschild and the Debtors did not even begin a professional relationship until the Letter Agreement

4

The retention application, supported by Resnick's declaration, also itemized the post-petition compensation to be paid to Rothschild, including a Monthly Fee of $150,000, a "Completion Fee" of $2,750,000 to be paid upon confirmation of a plan of reorganization or other disposition of the Debtors' assets, and a credit (the "Monthly Fee Credit") to reduce the Completion Fee, with the credit equaling fifty percent (50%) of the Monthly Fees paid by the Debtors from the initial effective date of the Letter Agreement (November 4, 2002). (Id., Ex. 3 at 9-10.) Although the Letter Agreement originally required the Monthly Fees to accumulate to $450,000 before Rothschild was required to provide a 50% credit of fees paid against the $2,750,000 Completion Fee, the proposed engagement under the retention application provided that "Rothschild has agreed, pursuant to further negotiations with the Debtors and their senior lenders, to amend the terms of the Monthly Fee Credit so as to eliminate the $450,000 basket … The benefit to the Debtors of the Monthly Fee Credit will therefore commence retroactively to the effective date of the Letter Agreement." (Id.)

On March 26, 2003, the Bankruptcy Court entered an Order authorizing the retention and employment of Rothschild as a financial advisor. (Docket Entry No. 1-10.) The interim retention Order authorized compensation and reimbursement of expenses to Rothschild in accordance with the Letter Agreement, subject to certain modifications, "which fees and expense reimbursements shall not hereafter be subject to challenge except under the standard of review set forth in Section 328(a) of the Bankruptcy Code." (Id. at 2.) The interim retention Order also contained a finding that "[i]t appears that Rothschild does not hold or represent any interest adverse to the Debtors'

---

was executed on November 4, 2002, 140 days before the Debtors' bankruptcy filing. (Docket Entry No. 12, Oct. 10, 2006 Hr'g Tr. at 6-7.)

5

estates and is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code." (Id.)

The Trustee objected to the retention application, asserting that the Completion Fee and all other compensation should be subject to court approval and the indemnification provisions should not be approved. (Docket Entry No. 4-5, Ex. 5.) The Trustee's objections did not make any reference to potential preference claims or contest whether Rothschild was "disinterested." The Trustee's objections were resolved in an Agreed Order approved by the Bankruptcy Court on May 23, 2003. (Docket Entry No. 4-4, Ex. 4.)

In April 2004, the Debtors filed their Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code ("the Plan"). (Docket Entry No. 1-24.) The Bankruptcy Court confirmed the Plan by Order entered April 22, 2004. (Docket Entry No. 1-26.)

On May 28, 2004, Rothschild filed a combined and verified Third Interim and Final Application for Allowance of Compensation and Reimbursement of Expenses (the "Final Application"), through which Rothschild sought final compensation for its post-petition services, including payment of the Completion Fee, less the applicable credit. (Docket Entry No. 4-6, Ex. 6.) The Final Application provided in pertinent part:

> 2. Under the Engagement Letter, as approved pursuant to the Retention Orders, Rothschild is entitled to payment of, among other things, a cash advisory fee of $150,000 per month as long as the engagement continues (the "Monthly Fee"), plus reimbursement of reasonable and necessary expenses. The Engagement Letter also provides for payment of a completion fee (the "Completion Fee")...
>
> 3. Annexed hereto as Exhibit B are the invoices for the total compensation and expenses sought by Rothschild for the Third Interim Period...
>
> \* \* \*

6

6. By this Application, Rothschild seeks an order: (i) granting allowance and approval of (A) interim compensation for services rendered during the Third Interim Period, consisting of $2,172,016.13 of fees plus the reimbursement of reasonable and necessary expenses incurred by Rothschild during the Third Interim Period in the amount of $15,800.59, for a total of $2,187,816.72 and (B) granting final allowance and approval of compensation for services rendered during the Final Period, consisting of $3,405,887.10 of fees plus the reimbursement of reasonable and necessary expenses incurred by Rothschild during the Final Period in the amount of $84,811.95, for a total of $3,490,699.05; ratifying and confirming all payments received by Rothschild in respect of fees and disbursements during the Third Interim Period and the Final Period, in each case pursuant to prior fee orders and the Fee Procedures Order, and as detailed in the monthly statements and (iii) authorizing and directing the Debtors to make payment in respect of all allowed fees and disbursements not yet paid to Rothschild for the Third Interim Period and the Final Period, as detailed in the invoices, including any "holdback" amounts withheld pursuant to the Fee Procedures Order

(Id., Ex. 6 at 4.) Rothschild did not itemize its calculation of the Completion Fee in the Final Application itself, but in the attached Exhibit B to the Final Application, Rothschild presented the following chart to show how it calculated the Completion Fee:

## JAMES RIVER COAL

### Rothschild Completion Fee Calculation

**Monthly Fees:**
    Pre-Petition
    November 4 - November 30, 2002                               $135,000.00
    December 2002 - February 2003     150,000      450,000.00
    March 1 - March 24, 2004                                     116,129.03
      Total Pre-Petition                                                 701,129.03[4]

---

[4] The Bankruptcy Court recognized that this amount was less than the $764,337.97 the Trustee sought in the preference action. The Bankruptcy Court stated:

> No proof was offered as to the difference in these figures. Unless the complaint is in error, the only logical conclusion based on sworn testimony and exhibits is that the difference is made up of expenses generated between November 4, 2002, and March 24, 2003, which were to be compensated pursuant to the Letter Agreement.

(Docket Entry No. 4-2, April 6, 2007 Memorandum Opinion at n.3.)

7

|  |  |  |
|---|---:|---:|
| Post-Petition |  |  |
| March 25 - March 31, 2003 |  | 33,870.97 |
| April 2003 - April 2004 | 150,000 | 1,950,000.00 |
| May 1 - May 6, 2004 |  | 29,032.23 |
| Total Post-Petition |  | 2,012,903.23 |
|  |  |  |
| Total Monthly Fees |  | $2,714,032.26 |

**Completion Fee Calculation:**

|  |  |  |
|---|---:|---:|
| Gross Completion Fee |  | $2,750,000.00 |
| Less: Monthly Fee Credit (a) | 50% | (1,357,016.13) |
| Net Completion Fee Owed |  | $1,392,983.87 |

(Docket Entry No. 4-7 at 19.) No objections to Rothschild's Final Application were filed. On July 7, 2004, the Bankruptcy Court entered an "Order Approving Third Interim And Final Application of Rothschild Inc. For Allowance Of Compensation And Reimbursement Of Expenses." (Docket Entry No. 4-9, Ex. 7.) The Trustee did not appeal the Order.

On March 24, 2005, the Trustee commenced the adversary proceeding against Rothschild seeking to avoid and recover preferential transfers in the amount of $764,333.97 under 11 U.S.C. §§ 547, 550 and to disallow claims under 11 U.S.C. § 502(d). (Docket Entry No. 4-10, Ex. 10.) The Trustee sought recovery of three (3) transfers the Debtors made to Rothschild pre-petition: (1) January 14, 2003 check payment of $135,000; (2) January 27, 2003 check payment of $150,000; and (3) March 18, 2003 wire transfer payment of $479,333.97. The three transfers detailed in the adversary complaint are not specifically identified in the retention application, the Letter Agreement, the Agreed Order, the Final Application, or the Order Approving Final Compensation. Also, none of the documents disclose the actual dates of any payments Rothschild received in advance of the Debtors' bankruptcy filings.

8

## III. STANDARD OF REVIEW

This Court reviews *de novo* the Bankruptcy Court's decision to grant summary judgment in favor of Rothschild. See Investors Credit Corp. v. Batie (In re Batie), 995 F.2d 85, 88-89 (6th Cir. 1993). Because the Bankruptcy Court considered matters outside the pleadings, Rothschild's motion was properly considered as one for summary judgment rather than for dismissal. Fed. R. Bankr. P. 7056; Benzon v. Morgan Stanley Distrib., Inc., 420 F.3d 598, 603 (6th Cir. 2005). Under Federal Rule of Civil Procedure 56, which applies to adversary proceedings and contested matters in bankruptcy cases pursuant to Federal Rules of Bankruptcy Procedure 7056 and 9014, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## IV. ANALYSIS

For the doctrine of *res judicata* to bar a claim, four elements must be present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. Bittinger v. Tecumseh Prods. Co., 123 F.3d 877, 880 (6th Cir. 1997). The parties do not dispute that the first two elements are met in this case. See Boddy v. U.S. Bankr. Court (In re Boddy), 950 F.2d 334, 336 (6th Cir. 1991) (Bankruptcy Court's Orders granting retention and compensation are final orders in context of bankruptcy law); Sanders Confectionery Prods., Inc. v. Heller Fin., Inc., 973 F.2d 474,

481 (6th Cir. 1992) (privity exists because Trustee steps into Debtors' shoes as "successor in interest"). Thus, the Court's analysis focuses on the third and fourth elements.

The initial question is whether the Trustee's preference claims were or should have been litigated when the Bankruptcy Court entered its Orders on retention and compensation of Rothschild. The parties and the Bankruptcy Court agree that there does not appear to be any Sixth Circuit case addressing this subject. The Court also has been unable to locate any Sixth Circuit cases on point.

The Bankruptcy Court's decision rested on two helpful bankruptcy cases from Delaware cited by the parties. In BCPM Liquidating LLC v. PricewaterhouseCoopers LLP (In re BCP Mgmt., Inc.), 320 B.R. 265, 268-269 (Bankr. D. Del. 2005), Chapter 11 debtors filed an application in the bankruptcy court to retain their longtime accounting firm, PricewaterhouseCoopers ("PwC") to provide services during the reorganization. In the retention application, the debtors disclosed four payments made to PwC during the 90-day preference period, but represented that PwC did not have a conflict of interest. Id. at 269. The Trustee objected to the retention application because of concern over possible conflicts of interest and the need for specifics regarding the payments made during the 90-day preference period. Id. The Trustee subsequently withdrew its objections after receiving additional information from the debtors and PwC, and the bankruptcy court entered orders granting the retention application and making it effective *nunc pro tunc*. Id. The bankruptcy court specifically found that PwC was a "disinterested person" under the bankruptcy code. Id. at 274.

The bankruptcy court confirmed a third amended joint plan, which assigned all of the debtors' interests to new entities. One of the new entities, BCPM LLC, filed an adversary proceeding against PwC seeking to recover alleged preferential and fraudulent transfers. The adversary complaint sought to recover four pre-petition transfers from the debtor to PwC, two of which had

10

not been disclosed at all in the retention application. PwC contended that the preference action was barred by *res judicata* Id. at 269, 274.

The bankruptcy court ruled that its order holding PwC was "disinterested" was specifically based on the debtor's retention application, PwC's disclosure of compensation, and supporting affidavits. Id. at 278. The court noted that the two undisclosed pre-petition payments were "mentioned nowhere in the retention application process[,]" and it appeared the Trustee had withdrawn his objection to the retention application based on representations in the affidavits supporting the retention application that "no colorable preferential claim existed with respect to the four transfers identified in the retention application." Id. The court observed that the facts PwC presented to the court "pointedly represented that there were no other relevant transfers[,]" id. and PwC's representation was contradicted by the adversary complaint.

The bankruptcy court held that, "[g]iven the substantial extent to which the two transfers identified in both the retention application and the [adversary complaint] were litigated in the retention process, I find that under the doctrine of res judicata those two transactions should not be subject to further challenge as preferences." Id. at 279. The court further held, however, that *res judicata* did not apply to bar litigation as to the remaining two transfers identified in the adversary complaint, but which PwC failed to disclose in the retention application. The court ruled the facts underlying the two undisclosed transfers were not "essentially the same" as those raised in connection with any prior proceeding, and for that reason *res judicata* would not bar the adversary proceeding. Id.

In PHP Liquidating LLC v. PricewaterhouseCoopers LLP (In re PHP Healthcare Corp.), 2002 WL 923932 at *1 (Bankr. D. Del. May 7, 2002), PwC was appointed to represent the debtors as

11

accountants and financial advisors. PHP Liquidating filed an adversary action against PwC alleging that PwC received more than $900,000 from the debtors in the preference period on an antecedent debt, which fact was not disclosed to the court in PwC's affidavit concerning whether PwC was a "disinterested" party. Id. PwC argued that PHP Liquidating was foreclosed by *res judicata* from litigating the issue because the bankruptcy court essentially held that PwC was "disinterested" when it entered orders retaining PwC and approving PwC's final fee applications and PHP Liquidating failed to appeal those orders. Id. PHP Liquidating countered that *res judicata* did not apply regardless of the finality of the orders because PwC failed to disclose the preference it received from the debtor, PwC's non-disclosure prevented the court from determining whether PwC was "disinterested" as required by § 327, and the claims asserted were not the same. Id.

The bankruptcy court observed that, while the debtor's application to retain PwC disclosed amounts paid by debtor to PwC in the year before the bankruptcy petitions were filed, the retention application did not disclose at all that within the 90 days prior to filing PwC was paid more than $900,000. Id. Thus, "the bankruptcy court was deprived of the opportunity to consider the effect of the alleged preference because the parties did not specifically disclose the transactions that would have prompted the inquiry. Id. at *3. *Res judicata* was not applied to bar the preference litigation. Id. at *5.

Here, the Bankruptcy Court correctly reasoned that, while the analysis of these two Delaware cases is useful, the facts of the cases are clearly distinguishable from the facts presented here. The Debtors' retention application, supported by the declaration of Rothschild's Managing Director, did not fail to disclose any payments the Debtors made to Rothschild in the 90 days before the bankruptcy petitions were filed. The retention application unambiguously disclosed that Debtors

12

first retained Rothschild to provide financial services on November 4, 2002, 140 days before the bankruptcy filing, in order "to serve as their financial advisor in connection with their restructuring efforts." (Docket Entry No. 4-3, Ex. 3 at 6.) The retention application disclosed the existence of the Letter Agreement and set forth its terms. The application revealed that Rothschild was being paid pre-petition a Monthly Fee of $150,000, and that this Monthly Fee would continue post-petition. In addition, Rothschild would be entitled to other compensation post-petition, including a Completion Fee.

Granted, the retention application did not specifically identify the date and amount of each payment the Debtors made to Rothschild pursuant to the Letter Agreement in the 90-day preference period before the bankruptcy petitions were filed; in fact, the retention application made no reference to the 90-day period whatsoever. Rather, in paragraph 23, the retention application stated that "[w]ithin the one-year period prior to the commencement of these Chapter 11 Cases, Rothschild has received approximately $764,333.97 from the Debtors in payment for services rendered and expenses incurred by Rothschild pursuant to the Letter Agreement." (Id., Ex. 3 at 9.) This statement did not provide the specificity the Trustee would like. Yet, the Trustee could readily surmise that the Debtors made monthly payments of $150,000 to Rothschild during the 90-day preference period. The Debtors disclosed they had retained Rothschild as of November 4, 2002, 140 days before filing for bankruptcy, specifically for the purpose of providing services in connection with the bankruptcy proceeding. Moreover, the same paragraph 23 of the retention application stated: "Rothschild is not currently owed any amounts with respect to its pre-petition fees and expenses." The retention application was filed on March 26, 2003, one day after the bankruptcy filing. Thus, the retention application clearly placed the Trustee on notice that the Debtors paid Rothschild $764,333.97

13

between November 4, 2002 and March 26, 2003, most of which likely was paid during the 90-day preference period (December 25, 2002 to March 25, 2003). The adversary complaint filed by the Trustee now confirms that all of the funds were paid to Rothschild during the 90-day look-back period.

Unlike the Trustee in BCPM Liquidating LLC, the Trustee here did not object to the retention application on the ground that more specifics were needed about the Debtors' payments to Rothschild during the 90-day period to evaluate the potential for a preference claim, nor did the Trustee question whether Rothschild was a "disinterested" party. See PHP Liquidating LLC, 2002 WL 923932 at *2-3. The Trustee objected to the retention application only on the grounds that the Completion Fee and all other compensation should be subject to court approval and the indemnification provisions should not be approved. (Docket Entry No. 4-5, Ex. 5.) These objections were resolved by Agreed Order approved by the Bankruptcy Court on May 23, 2003. (Docket Entry No. 4-4, Ex. 4.)

There is no evidence that the Trustee objected to any of Rothschild's three applications for payment during the bankruptcy proceeding. When Rothschild presented its Final Application, it again set forth the terms of the Letter Agreement regarding compensation and in the appended Exhibit B provided a chart calculating the Completion Fee. This chart clearly identified the pre-petition payments the Debtors made to Rothschild. The Trustee filed no objections to Rothschild's Final Application. When the Bankruptcy Court approved the Final Application, the Trustee did not appeal the Order.

The Trustee now complains that the chart specifically identifying the Debtors' pre-petition payments to Rothschild was placed, not in the Final Application itself, but in Exhibit B attached to

14

it. This slim reed cannot bear the weight the Trustee tries to put upon it. The undisputed facts remain that the Debtors and Rothschild disclosed the pre-petition payments and the Trustee had notice of those payments. In BCPM Liquidating LLC and PHP Liquidating LLC, the debtors and PwC failed to disclose *at all* the pre-petition payments at issue in the adversary complaints filed in those cases. This distinction concerning the fact of disclosure is what persuaded the Bankruptcy Court in this case to hold, like the bankruptcy court in BCPM Liquidating LLC, that *res judicata* applies where the pre-petition payments are disclosed. The same essential facts that were or could have been litigated in the retention proceeding and Rothschild's Final Application for payment—before the Bankruptcy Court entered its Orders approving retention and final payment—would now be re-litigated in the Trustee's adversary action, which is identical to the prior opportunities to litigate these issues. Thus, the third and fourth elements of *res judicata* are satisfied under the facts of this case.

To permit the Trustee's adversary action to proceed, even though the Debtors timely disclosed pre-petition payments to Rothschild, would provide the Trustee with an end-run around the Bankruptcy Court's orders on retention and final payment, orders the Trustee did not challenge on appeal. Further, because the Trustee stands in the shoes of the Debtors, permitting the adversary action to proceed would allow the Debtors to spin 180 degrees on the question of whether Rothschild was a "disinterested person" under the bankruptcy code. Having retained and paid Rothschild to provide services pre-petition directly to the Debtors and post-petition to the bankruptcy estate, all with the Bankruptcy Court's approval without objection, the Debtors through the Trustee should not now be permitted to sue Rothschild to recoup the pre-petition payments as preferences. Finally, permitting the Trustee to recover the pre-petition payments as preferences would result in financial

15

harm to Rothschild. In the calculation of the Completion Fee, the Debtors received a credit of 50% of the Monthly Fees paid to Rothschild, and some of those Monthly Fees were incurred pre-petition, as disclosed in the retention application and the Final Application. Allowing the Trustee to recover the pre-petition payments through the adversary action, after credit was given to the Debtors for those payments in calculating the Completion Fee, would reduce Rothschild's total compensation. This result would occur despite the Bankruptcy Court's prior, unappealed Orders approving Rothschild's compensation and despite the fact that Rothschild's compensation is determined as a matter of contract by operation of Rothschild's Letter Agreement with the Debtors, as amended by the Bankruptcy Court. The Trustee argued below that Rothschild's voluntary agreement to give a credit for 50% of Monthly Fees, without "quid pro quo text" specifying that the credit was given in exchange for no preference liability, left open the door for litigation in an adversary action whether any of the pre-petition Monthly Fees paid by the Debtors to Rothschild were preferences. This argument does not overcome the fact that the Debtors and Rothschild timely disclosed all of the pre-petition payments, and the Trustee did not raise any potential preference issues during the retention or final payment proceedings. See BCPM Liquidating LLC, 320 B.R. at 279.

## V. CONCLUSION

For all of the reasons stated, the Court concludes that the Bankruptcy Court's entry of summary judgment in favor of Rothschild should be affirmed. The Bankruptcy Court correctly determined that *res judicata* applies to bar the Trustee's adversary complaint.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

16